J-S47043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., FATHER | : | No. 462 MDA 2019 |

Appeal from the Order Entered March 1, 2019
in the Court of Common Pleas of Montour County
Civil Division at No(s): 2017-00048

BEFORE: DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 05, 2019**

J.G. ("Father") appeals from the Order granting the Petition filed by the

Montour County Children and Youth Services ("CYS" or the "Agency"), seeking

to involuntarily terminate Father's parental rights to his minor female child,

R.G. (born in June 2002) ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A.

§ 2511(a)(1), (5), (8), and (b).[1]  We affirm.

On December 12, 2018, CYS filed a Petition seeking involuntary

termination of Father's parental rights to Children.  The trial court conducted

_____

[1] We note that the trial court also terminated the parental rights of K.H.,
Child's mother ("Mother"), who is not a party to the instant appeal.  Child has
a younger sister, W.G. (born in August 2004), who is Father's daughter with
Mother (collectively, R.G. and W.G. are referred to as "the Children").
Although the trial court also terminated Father's rights to W.G., Father has
not challenged that termination Order.

an evidentiary hearing on the Petition in February 2019.[2] At the start of the hearing, Father's counsel requested a continuance, because Father was awaiting a decision regarding his Social Security Disability. The trial court denied counsel's request. Subsequently, in its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the following Findings of Fact:

3. Because of lack of supervision and lack of cleanliness, the [C]hildren were placed with [their] maternal grandmother on April 26, 2016, with a safety plan. Dependency was established [on] May 14, 2015. The [C]hildren returned to Mother's home on August 5, 2015, but returned to the foster care [placement on] September 16, 2015. They were returned home [on] February 12, 2015. But [the Children] were finally returned to foster care [on] May 5, 2016, where they have remained until the present.

4. After a goal change hearing, the goal for the [C]hildren was changed to adoption on April 5, 2017. A [P]etition for termination of parental rights was filed [on] November 27, 2017. However, that [P]etition was withdrawn because of Father's jury acquittal on serious criminal charges for which he spent two years in jail. … The [A]gency wanted to give Father more time to establish himself with a job and housing.

….

6. Father and Mother separated in about 2008. Mother had custody of [the Children]. In 2009, [CYS] asked Father to take the [C]hildren because of issues with Mother's parenting. [Father] had custody until early 2013. During much of that time he was

---

[2] At the hearing, Child's legal interests were represented by John McDanel, Esquire ("Attorney McDanel"), and Child's best interests were represented by her guardian *ad litem* ("GAL"), Michael Wintersteen, Esquire. ***See In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel to represent the legal interest of a child involved in a contested involuntary termination proceeding). Relevantly, Attorney McDanel testified that Child was unable to communicate her preferred outcome because she has Down Syndrome. ***See*** N.T., 2/25/19, at 96.

living with a girlfriend [] and her children. [Father subsequently] moved out in 2013[,] and moved in with Mother and her husband and her children.

7. Father went to jail in May 2013 for theft of a vehicle. He spent 20 months in jail until January 2015. During that time[, Father] lost his Social Security Disability[,] which he had been receiving for a broken heel bone, PTSD, depression and [a] bi-polar condition. During this time, Mother received a [Protection From Abuse Order] against Father and received custody of the [C]hildren.

8. In May 2015, Father was arrested and jailed for a sexual assault crime. He remained in jail until July 2017[,] when he was released after a jury found him not guilty.

9. When Father was released from jail, a permanency plan was put in effect. Per the plan, [Father] needed to maintain housing; have verifiable income; secure transportation; cooperate with Justice Works; and maintain contact with the [C]hildren. Father cooperated with Justice Works. He maintained contact and visits with [Child]. He had some transportation through a public van service but recently discontinued it because he could not pay the minimal fee.

10. As to income, [Father] continues to wait and see if his Social Security income will be approved. He filed an application upon release from prison in July 2017. Because of the bureaucracy and typical delays, [Father] is still waiting for a decision on a hearing that was held in December 2018. However, [Father's] efforts to earn income within his abilities have been minimal to non-existent. He has had no income.

11. As to housing, Father's efforts have been fruitless. He had been denied the right to live with the [C]hildren [in the residence of his girlfriend,] since she had a felony child endangerment conviction on her record. [Father] lived with [his girlfriend] for over a year[,] until about early December 2018. [Father] was then homeless, squatting in an abandoned or empty building. He was arrested for assault and/or harassment and/or trespass in Sunbury, Pennsylvania, on or about February 4, 2019. [Father] stated at the time that he was homeless. At the time of the termination hearing, he remained in prison in lieu of $75,000.00 bail.

12. Father continues to use [illicit] marijuana. He indicates that if he had more money, he would qualify for medical marijuana. [Father] said the marijuana helps him, and he intends to continue using [it].

13. The [C]hildren are doing well in their now longtime foster home. The foster parents intend to adopt the [C]hildren if there is a termination of parental rights. The [C]hildren are healthy, happy, and maturing age[-]appropriately. [Children] both have stability and tranquility in their lives[,] for possibly the first time. They are thriving in school and very comfortable.

….

15. [Child] is a pleasant and affable child. She has Down Syndrome and a heart condition and tubes in her ears[,] all of which need[] medical attention. She also requires speech therapy. [Child's] foster parents have been meeting her needs.

16. The [A]gency made reasonable efforts to assist Mother and Father in their efforts to provide reunification and to help Mother and Father remedy the conditions that led to removal.

17. At the time of the hearing, the [C]hildren had been in the care of the [A]gency for over 22 months. Father has not had custody of the [C]hildren for almost four [y]ears. Shortly before those four years, he had been in jail for vehicle theft for 20 months.

18. [Child] has been removed from Father's care by the court for a period of at least six months[;] [] the conditions that led to the removal and placement of the [C]hildren continue to exist[;] and Mother and Father cannot practically remedy these conditions within a reasonable period of time.

19. The services or assistance available to Father are not likely to remedy the conditions which led to the removal or placement with[in] a reasonable period of time.

20. It is in the best interest of [Child] that parental rights be terminated because termination would best serve the developmental, physical, and emotional needs and welfare of the [C]hildren.

21. [Child] has been removed from the Father by the court[;] [] more than 12 months have elapsed from the removal and placement[;] [] the conditions which led to the removal continue to exist[;] and termination of parental rights would best serve the needs and welfare of the [C]hildren.

22. The GAL and [Attorney McDanel] agree that termination of parental rights is supported by the facts and the law and is in the [C]hild's best interests.

23. The [CYS] witness was credible.

Trial Court Opinion, 5/7/19, at 3-5.

On March 1, 2019, the trial court entered an Order terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (5), (8), and (b). Father timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

In his brief on appeal, Father raises the following issues:

A. Did the [trial court] commit an error of law and abuse [its] discretion when it determined the burden of clear and convincing evidence was met in terminating the parental rights of [Father] pursuant to 23 Pa.C.S.[A] § 2511 *et.* [*sic*] *seq.*?

---

[3] On May 22, 2019, this Court issued a Rule to Show Cause why Father's appeal should not be quashed pursuant to ***Commonwealth v. Walker***, 185 A.3d 969, 977 (Pa. 2018) (requiring separate notices of appeal from a single order resolving issues on more than one docket). Father filed a Response, explaining that the dependency docket number was included only for reference, and that Father's appeal raises exclusively from the termination proceeding. This Court discharged the Rule to Show Cause on May 31, 2019. Upon review, we conclude that under the unique circumstances of this case, where each of Father's claims arise from only one docket number and one proceeding, there is no jurisdictional impediment to our review under ***Walker***. We therefore decline to quash Father's appeal on this basis.

B. Did the [trial court] commit an abuse of discretion and an error of law when it determined that Father could not or would not remedy those conditions within a reasonable period of time pursuant to 23 Pa.C.S.[A.] § 2511 *et.* [*sic*] *seq.*?

C. Did the [trial court] commit an error of law when it determined that the conditions that lead [*sic*] to the removal or placement of the [C]hild continue to exist and termination of parental rights would best serve the needs and welfare of the [C]hild (23 Pa.C.S.[A.] § 2511(a)(5)[)], when Father's incomplete goal, having income and/or employment, is currently pending a Social Security decision?

D. Did the [trial court] commit an error of law and abuse of discretion when it determined that the conditions that lead [*sic*] to the removal or placement of the [C]hild continue to exist and termination of [Father's] parental rights would best serve the needs and welfare of the [C]hild (23 Pa.C.S.[A.] § 2511(a)(8)[)], when Father's incomplete goal of acquiring a residence relied on Father's Social Security appeal decision?

E. Did the [trial court] commit an error of law and abuse [its] discretion when it denied Father's request to continue the Termination of Parental Rights hearing until receiving the result of Father's pending Social Security [a]ppeal decision?

Father's Brief at 4-5.[4]

We will address Father's first four issues together, as they each allege that the trial court abused its discretion in terminating his parental rights to Child. **See id.** at 18-33. Father claims that CYS did not cite any concerns for Child's safety or well-being. **Id.** at 18. Father also points out that he had completed three of his goals, and had attempted to overcome the barriers to

---

[4] Because we have already addressed the propriety of Father's appeal under **Walker**, we will not separately address the issue identified as "Issue F" in Father's Brief.

completion of the remaining two goals (*i.e.*, securing acceptable housing, and achieving financial stability). *Id.* at 18-19, 26, 30, 32. According to Father, he "only requires the decision from Social Security to obtain income and housing." *Id.* at 29; *see also id.* at 30, 32. Additionally, Father acknowledges his marijuana use, but argues that CYS failed to present evidence that his use of marijuana renders him unable to parent, or that he uses drugs in the presence of Child. *Id.* at 21.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citation and quotation marks omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of subsection 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider section 2511(a)(8) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

Parental rights may be terminated pursuant to Section 2511(a)(8) if "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009). "As this Court has repeatedly indicated, termination under subsection (a)(8) does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of [the] children." ***Id.*** (emphasis in original; citation omitted). Instead, subsection (a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." ***Id.*** (citation and quotation marks omitted).

Therefore, the relevant questions are whether the parent has remedied the conditions that led to the removal of the child and whether the child's reunification with that parent is imminent at the time of the termination

hearing. *See id.*; *see also In re Adoption of R.J.S.*, 901 A.2d 502, 512 (Pa. Super. 2006) (concluding that termination under section 2511(a)(8) was appropriate where the mother was not in a position to parent her children at the time of the termination hearing). "If a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, CYS has fulfilled its mandate and[,] upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003) (citation, quotation marks, and brackets omitted). As we have previously stated,

> [w]e recognize that the application of [subsection] (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of [his] children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care.

*In re I.J.*, 972 A.2d at 11 (emphasis in original; citation omitted).

The focus in terminating parental rights under section 2511(a) is on the parent, but, pursuant to section 2511(b), it is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008). With regard to section 2511(b), this Court has stated,

> [o]nce the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be met by termination pursuant to subsection (b). In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted); *see also In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (stating that "[t]he emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." (citation, quotation marks, and brackets omitted)). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis.

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and

quotation marks omitted). Thus, the court may emphasize the safety needs

of the child. ***See In re K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008) (affirming

involuntary termination of parental rights, despite existence of some bond,

where placement with mother would be contrary to child's best interests).

"[A] parent's basic constitutional right to the custody and rearing of his or her

child is converted, upon the failure to fulfill his or her parental duties, to the

child's right to have proper parenting and fulfillment of his or her potential in

a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856

(Pa. Super. 2004).

Here, with regard to section 2511(a)(8) and (b), the trial court stated

as follows:

> Father primarily argues that he could not secure housing or financial stability until his Social Security [appeal] was decided. He argues that as soon as he receives what he believes will be a positive outcome to his Social Security case, he can adequately support [Child]. "Parental rights may not be preserved by waiting for some more suitable financial circumstances or convenient time for the performance of parental duties and responsibilities. Further, parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***In the Interest of C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted).
>
> In this case, the court has expressed sympathy with Father for losing custody when he was arrested, jailed, and acquitted two years later. The first termination [P]etition was withdrawn to give Father more time to get himself in a position to raise [the C]hildren. His efforts were minimal at best. He chafed at finding housing other than with his questionable girlfriend[,] who

- 12 -

eventually split with him. He sought not to be employed, preferring to wait for Social Security. He could have worked at least part-time. [Father] continued to use drugs[,] and stubbornly said he would continue to do so. All of this was bracketed by a twenty[-]month jail stint for vehicle theft[,] and a subsequent [Protection From Abuse Order] in 2013-2015[,] and the recent February 2019 incarceration at the time of the hearing, while he was homeless. He has had some tough breaks in a system that can aggravate troubles. But[,] most of his difficulties have been self-inflicted.

....

… Father has not complied with the [service and permanency] plans and has not met [C]hild's needs. Finally, over twenty-two months (actually almost four years) prior to the filing of the [P]etition have elapsed from the date of [C]hild's removal and placement, [] the conditions which led to their removal persist, and termination of parental rights would best serve the needs and welfare of [C]hild.

[Section] 2511(b) provides that "[t]he court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." Not only has Father failed to perform parental duties for [Child] [s]ince July 2017, (and before), [but also] there is no indication that he will be able to do so in the near future. It is not in the best interest of [C]hild to deny her permanency, stability, comfort, and hopes.

Trial Court Opinion, 5/7/19, at 7-10.

Here, the trial court appropriately considered that (1) Child has been removed from the care of Father for at least twelve months; (2) the conditions that led to the removal or placement of Child continue to exist; and (3) termination of parental rights would best serve Child's needs and welfare. *In re I.J.*, 972 A.2d at 11; *In re C.L.G.*, 956 A.2d at 1005. The trial court additionally considered that, because of Father's neglect, any bond that Child

- 13 -

has with Father must be severed for the well-being of Child. ***See In re: T.S.M.***, 71 A.3d at 270-71 (concluding that severing the children's bond with their mother and the termination of the mother's parental rights best served the children's needs and welfare). After a careful review of the record, this Court finds competent, clear and convincing evidence in the record to support the trial court's decision to terminate the parental rights of Father. ***In re Adoption of S.P.***, 47 A.3d at 826-27. Thus, we find no abuse of discretion in the trial court's termination of Father's parental rights to Child.

In his fifth issue, Father asserts that the trial court abused its discretion by denying his request for a continuance. Father's Brief at 33. According to Father, the outcome of the Social Security proceedings would determine his ability to complete his remaining permanency goals (*i.e.*, obtaining income and housing). ***Id.*** at 34.

Initially, we note that Father failed to adequately develop this argument with citation to relevant case law. ***See*** Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). While we could deem Father's issue waived on this basis, we decline to do so. In any event, Father's claim does not entitle him to relief.

> We adhere to the following standard of review:
>
> Because a trial court has broad discretion regarding whether a request for continuance should be granted, we will not disturb its decision absent an apparent abuse of that discretion. An abuse of discretion is more than just an error in judgment and, on appeal,

the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will.

*In re J.K.*, 825 A.2d 1277, 1280 (Pa. Super. 2003) (citations omitted).

The trial court adequately explained its reasoning in denying Father's request for a continuance while he litigates his appeal of the denial of his request for Social Security income. *See* N.T., 2/25/19, at 5-6; Trial Court Opinion, 5/7/19, at 7-10. Although Father may profess to love Child, this Court has generally stated that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007). "[A] child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 733 (Pa. Super. 2008) (citation and quotation marks omitted). Therefore, Father is not entitled to relief on this claim.

Based upon the foregoing, we affirm the Order terminating Father's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/05/2019

- 15 -